AMERICAN RAILROAD COMPANY, PLAINTIFF AND APPELLEE, v. MICHEO ZANDÍO & CO. ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Arecibo in an Action of Intervention.

No. 3161.—Decided July 9, 1924.

PREFERRED CREDIT—STORAGE AND CONSERVATION.—It having been proved that the railroad company had the rails stacked on crossties alongside its warehouse in the same manner that other merchandise of the fourth class was cared for, under the constant view of its day and night watchmen and warehouse employees, it is clear that the allegation of storage and conservation was proved. It was not necessary that the rails should be kept under cover.

ID.—ID.—LIMITATION.—As the rails had not been delivered by the carrier when it brought the action of intervention alleging that it had a preferred credit for conservation and storage, it can not be held that the action was barred by limitation under subdivision 3 of section 952 of the Code of Commerce.

INTERVENTION—PERSONAL PROPERTY—PREFERMENT OF CREDIT.—In accordance with section 1 of the Act of March 14, 1907, in an action of intervention for personal property as established by the said Act the question of who has a better right to the attached property may be considered and it is for the appellant to show the existence of error, if any, in the decision of the court below on the matter of preference.

The facts are stated in the opinion.

Messrs. Largé & Zeno for the appellants.

Messrs. F. H. Dexter and F. Acosta Velarde for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Micheo Zandío & Company, in a suit against the Arecibo Sugar Company, attached as the property of the defendant a lot of steel rails in the possession of the American Railroad Company and consigned to the Central Bayaney at Arecibo.

Thereupon the railroad company intervened, claiming a preferred lien for storage and conservation of the property in question, and obtained a judgment from which plaintiff in the original action appeals.

Appellant would have no reason to complain if the appeal should be dismissed for want of a separate assignment of errors; but appellee has raised no question in this re-

gard and we have examined the record in so far as necessary to satisfy ourselves that no injustice has been done.

Interpolated at intervals in the argument for appellant, we find the following:

### "First.

"The District Court of Arecibo erred in finding that the intervenor enjoyed a prior right over the petitioner Micheo Zandío & Co. to collect from the proceeds of the rails attached by the latter by virtue of the preference given by law for the recovery of transportation charges, since, by erroneous interpretation and undue application, the judgment thus violated subdivision 4 of section 1823 of the revised Civil Code, section 375 of the Code of Commerce and subdivision "c" of section 4 of Chapter III of the Public Service Law of Porto Rico, approved December 6, 1917.

"In order the better to point out the error of the lower court we will divide the same into two parts:

"(a)—The Court erred in adjudging priority to the claim of the intervenor for transportation of the rails attached over the claim of Micheo Zandío & Co. thereto.

"(b)—The lower court likewise erred in holding that the claim of the intervenor for the so-called storage and conservation of the said rails enjoyed priority over the claim of the said petitioner thereto.

### "Second.

"The lower court erred in not finding that the action had prescribed after one year from the time it could have been brought, as contended by Micheo Zandío & Co., thus failing to apply subdivision 3 of section 952 of the Code of Commerce in relation to sections 2 and 375 of the said Code and section 1823 of the Civil Code of Porto Rico; as well as the jurisprudence of the Supreme Court of Spain cited in the judgment, the latter by undue application.

### "Third.

"The lower court erred by giving undue weight to the oral and documentary evidence offered at the trial, thus violating the provisions of section 118 of the Law of Evidence in connection with the maxim *actore non probante reus est absolvendus* upon which it rests.

### "Final Ground.

"In concluding this brief it is our duty to call the attention of this court to a point which we regard as of vital importance.

"The American Railroad Co. of Porto Rico has filed a complaint in intervention alleging a better right under the special proceeding provided for by the Act applicable to intervenors, approved March 14, 1907. It has followed, step by step, all the formalities provided for in said Act. It filed the written claim, the oath and the bond prescribed by said Act. By virtue of the bond it has got possession of the rails, the object of this suit. It has raised the question in writing up to the trial. And this Act of 1907 being applicable only to *intervention in ownership of real property,* cannot properly be applied to interventions to establish the BETTER RIGHT, which are beyond the purview of that Act and governed by the ordinary proceeding. Sections 1, 3, 5 and 16 of the said law show clearly that it' is solely and exclusively applicable to interventions in ownership of real property, never to interventions to establish a better right."

With reference to the first subdivision of the first assignment, it will suffice to say that the court below does not appear to have included, by way of allowance, either in its judgment or in its findings, any item covering transportation charges.

The theory of the second subdivision of the first assignment is that the rails were neither stored nor conserved, but, instead of being kept under cover in a warehouse, were left outside and exposed to the weather.

There is nothing in the evidence to show any actual deterioration by reason of oxidation or otherwise. The rails were stacked upon crossties in the same manner in which the railroad company keeps its own rails and there was uncontradicted testimony to the effect that rails so placed will keep for years without deterioration.

The schedule of rates prescribed for storage charges as approved by the former Executive Council, predecessor of the present public service commission, and unamended by the latter specifies four different classes of merchandise and the rate charged in the instant case was that covering fourth-class merchandise.

This difference in class and rates implies a corresponding difference in the degree of care required according to

circumstances, and the rails in question were kept by the company, upon its own premises, alongside its own warehouse in the. same manner that other merchandise of the fourth class was cared for, under the constant view of its day and night watchmen and warehouse employees.

In the circumstances we do not deem it necessary to an affirmance of the judgment below to discuss dictionary definitions of the words *storehouse* and *storage* quoted by counsel for appellant, nor to dwell on the numerous American authorities cited by counsel for appellee.

Nor are we disposed to follow counsel for appellant in an extended analysis of various provisions of "The Uniform Warehouse Receipts Act" of 1918, laws of that year, page 22, in the absence of anything in the title of that law or in the brief for appellant to show that the same is applicable to the case of goods left or abandoned by the consignee in the hands of a carrier.

The argument under the second assignment concedes that the limitation relied upon would begin to run only upon delivery of the goods, and, in the case at bar, the rails in controversy were never delivered.

The third assignment likewise involves a question of fact, rather than of law, and is equally without merit.

It may be that, technically, the "final ground" of appeal is more or less tenable, but the judgment below is presumed to be correct and the error, if any, does not appear to be of such a character as to require a reversal. All things considered, we are content to refer in this connection to *Benítez* v. *Rodríguez et al.*, 16 P.R.R. 611, and *Luiña Bros.* v. *Miguel et al.*, 28 P.R.R. 875, cited by appellee.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro, and Justices Aldrey and Franco Soto concurred.

Mr. Justice Wolf took no part in the decision of this case.